The opinion of Tilghman C. J., and Duncan J., was delivered by
Duncan J.
The important question in this case was, did the levy and sheriff’s deed to Thomas Lloyd, include the lands claimed by the defendant ? The levy is of 320 acres, more or less, adjoining John Hollingsworth, where John Blair now lives. The sheriff’s deed is in the words of the *260 levy. The limitations in a conveyance, are always matter of law. What lands are described, is often a matter of fact, The operation of the deed, as to the nature of the estate, is for judicial construction ; the description of the property, its extent, often is a mixed question of law, and fact. Such was the case here. The levy was not by Courses and distances, marked boundaries, or monuments, nor was it of any ascertained fixed quantity: 320 acres, more of less, would be very uncertain ; but. it is rendered certain by a reference to the residence of John Blair. This is to be made out by evidence, and is a fact for the jury to decide. If the quantity was less than 320 acres, the vendee must be content with it; if more, he is entitled to it. This is a usual description in levies. In many cases the sheriff cannot be more particular. In the sales of Col. Francis’s valuable estate on the West Branch, the lands were described by numbers, and as being in the tenure of particular persons; and though the' quantity was in many instances much greater than stated in the levy, the vendee held by the estate of such possessions.
The antecedent article between Thomas Lloyd, and the heirs of Andrew Carson, not being recorded, could not affect a subsequent purchaser at sheriff’s sale, without actual notice, or take from him lands not included in the first levy and sale, and included in the second. Nor could any agreement between Andrew Carson’s heirs, Thomas Lloyd, and the judgment creditors, affect any purchaser. The record gave him information what was sold. The limits could not be stretched by an agreement, of which he had not notice. If a conveyance is recorded, and the vendor sells and conveys to another, no articles of agreement not recorded, could affect a subsequent purchaser, however apparent the mistake might be in the description in the deed, unless such actual notice as would affect the conscience of the purchaser, and render his purchase fraudulent. The articles could only have been introduced to cut down and controul the levy and sheriff’s sale. It could not be to fix the lands on which John Blair lived.
The first question proposed to the Court, required their ' opinion on the unrecorded agreement, and is expressed with legal precision. It .was calling on the Court to instruct the jury whether this could have any operation on Peter Swartz, unless he had notice.
*261 “ 1. That a secret agreement between a purchaser at sheriff’s sale of part of a large tract of land, made with the defendant in the execution, varying from the levy, and extending the boundary of that tract, shall be void against a subsequent purchaser of the residue of the large tract, who had no notice of such agreement.
Anstoer of the Court. Such agreement would be void ; but there is no evidence of the article of agreement being secret, nor does it appear, that Thomas Lloyd has extended his boundary beyond the levy under which he bought.”
Every agreement with relation to a subsequent purchaser, is as to him secret, unless he has notice either actual or constructive ; notice by registry or direct information, or that notice which may be deemed sufficient to put him on inquiry, for that is evidence of an actual notice. “ The agreement would be void,” say the Court, “ if secret, but there is no evidence of its being secret.” I cannot understand this as conveying any other meaning, than that there was no evidence of its being concealed, or occult. Now this was not the question. It might not be a concealed interest. It might not, nor could it be, a secret to all the world; it might be known to every man in the township, but the purchaser. It might have been published in the county papers, and yet be unknown to Peter Swartz. The evidence of notice must be actual to the person; for his right is postponed, on the ground of bad faith, in taking a paper not recorded, in converting the registery acts intended to prevent a fraud into a fraud: and so important do the Court consider these articles, that they do not put the cause to the jury on the sheriff’s deed, but on the articles, or the declarations of Thomas Lloyd., and the survey of Wilson, all taken together ; and if the jury, taking them together, believe that Thomas Lloyd was not entitled to the water and waste land, then, it is said, it would be fraudulent in him to extend his boundaries.
« 2. That if the jury believe the evidence,.Thomas Lloyd limited his boundary to the high land along the bank of Loyalsock, and declared that he had purchased none of the water of said creek, or the waste land bordering thereon ; it would be fraudulent against a subsequent purchaser, to extend his boundary, so as to include either the water or waste land.
Answer. Whether Thomas Lloyd is entitled to the water of the creek and waste land bordering thereon, must depend on the evidence of the articles of agreement, the declarations *262 of Thomas Lloyd, the survey of Wilson, all taken together; of which the jury are to judge ; and if they believe he is not entitled to the water and waste land, it would be fraudulent f°r him to extend his boundaries.
3. That the purchaser of land from the administrator or heirs of an intestate estate, incumbered with judgments or debts, without any order of the Orphans’ Court, takes it subject to all legal demands of the creditors of said estate ; and no article, secret understanding, or agreement between said purchaser and heirs, can controul the rights of the creditors, or affect the lien, or prevent the sale of the lands afwards by due course of law.
Answer. To this, the Court agree; but if the jury believe the creditors have assented to this article of agreement, and received part, and expect to receive the remaining sum, Thomas Lloyd would be entitled to the benefit of any covenants in his favour, if any such there be.”
And in the answer to the third question, the meaning of the Court is ascertained to my perfect conviction: it is not put on the knowledge of Peter Swartz, “ but on the assent of the creditors, and if the jury believe the assent of the creditors to the agreement, and that they received part of the purchase money and expected to receive the balance, Thomas Lloyd would be entitled to the benefit of any covenants in his favour.” If the intention of the Court was, to instruct the jury that Peter Swartz could not be affected by the articles, unless he had notice of them before his purchase, it is most unhappily expressed: the words to common understandings do not import this, and all the ingenuity exerted by the counsel for the defendant in error, has n®t satisfied me, that such was the intention of the Court; and if it was, that intention was so obscurely expressed, as that the jury might be misled. If this was the meaning of the Court, I must confess that the words used have misled me.
I cannot say, that under the facts disclosed, there was error in the answer of the Court, to the fourth question. Although the acts and declarations of Thomas Lloyd may be evidence to go to the jury as facts, acts defining and fixing the boundaries of the lands sold to him, and although no declarations were made to Peter Swartz himself; yet if made to others, and communicated to him, and in confidence of their truth, he bought, it would be evidence of his own con *263 struction of his purchase, and what was intended by the land on which John Blair lived. But as the Court were called on to say, that in equity, this amounted to a positive bar, they were right in declaring it to be no bar.
For the reasons assigned, I am of opinion, that there was error in the instruction of the Court to the jury, with respect to the articles between Thomas Lloyd, and the heirs of An* drew Carson, and the agreement of the creditors : and that judgment be reversed, and a venire facias de novo awarded.
Gibson J.
The articles of agreement would have effect, only in case the levy and sheriff’s sale under Walker’s judgment did not include the land in dispute: for if it were included, it passed by the sheriff’s deed, and no agreement of the heirs and creditors of Andrew Carson with the purchaser, could add to the validity of the title. For the present, therefore, we are to consider the defendant’s title as resting on the articles only, as evidence, either that more actually passed under the description in the levy and sheriff’s deed, than, by its terms, it purported to contain ; or, as an equitable title arising from the articles themselves, and not derived through the medium of the sheriff’s sale : and in either case a subsequent purchaser, without notice of the articles, would not be affected by them. Immediately on the death of Andrew Carson, John Rose had a lien on the land in the hands of his heirs, which, if he pleased, he might relinquish ; and if he did so in favour of a purchaser who brought on the faith of such relinquishment, his lien would be discharged against himself, and all others succeeding to his rights with notice of what had been done by him ; but not against a bona fde purchaser, from John Rose himself, after he had become a judgment creditor, and purchaser under his own judgment. If Peter Swartz, when he bought, was ignorant of the arrangement contained in the articles of agreement, and of John Rose’s assent, that this land was to pass by the sheriff’s deed, as being considered by all parties, to be within the limits of the levy; or, if such were their intention, to pass independently of the deed by force of the articles themselves, he would be entitled 'to all the land, which the defendant could not shew, by other proof than the articles, was originally included in the levy and sheriff’s deed. It was therefore essential to the defendant’s case, to bring home *264 notice to Peter Swartz: and the plaintiff’s counsel, aware of the importance of want of proof in this particular, requested the Court to instruct the jury, “ that a secret agreement between a purchaser at sheriff’s sale, of a part of a larger tract, and the defendant in the execution, varying from the levy, and extending the boundary of the part sold, is void against a subsequent purchaser of the residue without notice of such agreement.” In answer, the Court charged, that such an agreement would be void; but at the same time observed, there was no evidence of the agreement having been secret, or that Thomas Lloyd had extended his boundary. It is admitted, the abstract principle was correctly expressed, but it is contended, it was coupled with an assertion of fact, that directly tended to mislead the jury as to what, in point of law, is to be considered a secret deed. I confess, I do not think so. Every deed is to be considered secret, of which the party to be affected had not notice, actual or constructive. On the record, there is no evidence of the article of agreement having been recorded, or that Peter Sxvartz had actual notice of its contents : and on the other hand, there is none of studied concealment of it existence ; and hence it is inferred, that the Judge, by asserting the agreement was not secret, meant, and was so understood by the jury, that a deed would not, in legal estimation, be considered secret, against a purchaser, if concealment were not purposely practised. I admit that where a Judge lays down the law correctly as far as he goes, but gives only a partial and imperfect view of the question, as where he states a general principle without stating the exceptions, when the evidence might bring the case within some exception ; or if it appear from his words, that enough was not expressed to enable the jury to judge of the legal effect of the facts in their different bearings on the question raised, it is error. But here, there is no ambiguity arising from what the Judge said; it arises, if at all, from want of evidence, on the record, of a fact asserted by him ; and, rather than to suppose him mistaken as to the fact, we are to deem him mistaken in point of law, by intending he meant to be understood, that the want of intention to conceal was equivalent to notice to the party to be affected: an absurdity I am unwilling to impute. If there had been any evidence to justify the assumption of the fact of notice, could the meaning of the Judge be considered *265 doubtful ? From the shape in which this record comes before us, we are not judicially certain that it contains all the evidence given at the trial; and as the plaintiff has not thought proper to take a bill of exceptions, by which all the evidence would have appeared, I will presume there was something to give colour to the supposition of actual notice, rather loan presume the jury were led into misapprehension of what, in legal estimation, is a secret deed. Ambiguity, to be error, should be patent, not inferred from latent and collateral circumstances, and ought to be more than sufficient to raise a suspicion, that a jury of common intelligence might be misled; for no expression of opinion, however clear and explicit, could stand a test so severe, as that possibility that the jury were misled should be considered error. A Court will not reverse except for manifest error. Here we have nothing but conjecture arising from extrinsic circumstances ; for the opinion of the Court is expressed by a simple affirmation, in answer to a question put, but accompanied by an assertion, that the facts on which the question was predicated did not exist. Can it be doubted the Court used the word “ secret,” in the same sense the counsel did, and if so, can the plaintiff complain ? If there was any doubt as to the meaning of the answer, it arose from the want of precision and definite meaning in the language in which the question was couched; which, without being designed to entrap, evidently had that effect. It is from considering, that questions put to a Judge are, for the most part, but remotely, if at all, connected with the merits, and that they are designed as instruments of reversal, in case of an adverse verdict, that I am always inclined to give his answers a construction the most favourable in support of the judgment. The act of assembly requiring the Judges of the Court of Common Pleas to put their opinions, together with their reasons, on the record, is the parent of vexation, delay, and of accumulation of costs, and is fatal to justice.
On the other points, I will merely add, that if Peter Swartz purchased, in consequence of disclaimer of title by Thomas Lloyd, the defendant claiming under him, would be concluded, no matter what Thomas Lloyd's title may have been, either under the articles of agreement, or sheriff’s deed. But even if those declarations did not induce the purchaser to buy, still they would be powerful evi *266 dence on a question, as to what actually passed by this sheriff’s deed, under the terms of the levy, and decisive, if the question were otherwise doubtful, particularly when taken in connection with an actual boundary, established by Thomas Lloyd, excluding the land in dispute. To this effect the jury were instructed, and I am therefore of opinion, there was no error in that part of the charge.
There was however another question put to the Court. They were requested to instruct the jury, that the purchaser of land from the administrator of an intestate, without an order of the Orphans’ Court, takes it subject to all the demands of the creditors, and that no articles or secret understanding between the heirs and such purchaser, can controul the rights of the creditors. In this, the Court concur, but say, that if the creditors assent to the agreement and receive a benefi-. cial interest under it, the case will be different. It is contended, that the Court should have gone further, and have instructed the jury, that although the creditors would be bound by their assent, yet a bona fde purchaser under their judgment would not; and that for want of this, the jury may have been led into error. Now, is there any thing in the question, to point the attention to a distinction between a creditor, and a bona fide purchaser under a creditor’s judgment ? The Court was not asked to give their opinion, whether their assent, to an agreement of the kind, would be obligatory on a purchaser from a creditor without notice, (that-had been disposed of by a previous direction,) but only whether it would bind the creditors themselves. If counsel will put abstract propositions to the Courtj they cannot complain if they are answered as such. Here a general principle was required, predicated on facts contained in the question, which might, or might not, exist in the cause ; and the Court are required to state their opinion of the law as applicable to the facts proposed, without relation to a purchaser. Was the Court bound to go beyond the question, and having stated the general principle, as also to mention all possible exceptions that might arise .from different complications of the facts? No powers of recollection would be equal to the task. For these reasons, I am opinion, the judgment should be affirmed.
Judgment reversed, and a venire facias de novo awarded.