3 w 50
131  572

## Scott *against* Sheakly.

What property is embraced in a levy which is obscure in its terms, may be shown by parol evidence ; and it is a matter of fact to be determined by a jury.
    If illegal evidence be given without objection, it is not error for the court to consider it in their .charge to the jury.

ERROR to *Mercer* county.

This was an action of ejectment brought by the plaintiff in error in the court below against the defendant, to recover the possession of a messuage and lot of ground fifty feet in width by two hundred feet in length, situate in a village called "Georgetown," in Mercer county.   Both parties professed to derive their respective claims to the land in dispute from George Sheakly, who was admitted to have been the owner of it.

The plaintiff, in order to support his claim, gave in evidence a deed of conveyance from George Sheakly to Daniel Carlisle, bearing date the 21st of June 1828, for one hundred acres, and one hundred and sixteen perches of land, describing it as follows: "all that farm of land situated and bounded as follows, except what is herein excepted, situated in Sandy Creek township, in said county of Mercer; beginning at an elm ; thence by donation lot No. 923, third district, south eighty-six and a half degrees, east one hundred and eighty-two perches and a half to a post; thence by land of William Sheakly north ninety-five perches to a post ; thence by land of Moses Sheakly one hundred and eighty-one perches and sixteenths of a perch to an iron wood; thence south eighty-two perches and one-tenth to the place of beginning, containing one hundred acres and one hundred and sixteen perches ; being the same piece of land on which the said George [George Sheakly] has laid out a town called ' Georgetown ;' and the said lots in said town, which the said George has sold to other purchasers, are not granted by this indenture, and the said George reserves to himself lot No. 26, and the south half of lot No. 29, in said town."   The lots sold by George Sheakly previously to his making this deed to Daniel Carlisle, were No. 38, 40, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 30, 29, 28, 27, 37, 20, 18 and 72 ; also a piece of ground called Culbertson's tannery, and another lot not numbered sold to G. Bennet.   The lot in question is No. 32, upon which there is a dwellinghouse, that was built before the levy and sale under which the plaintiff claims to recover it.   The plaintiff further gave in evidence the record of a judgment obtained in the court of common pleas of Mercer county by George Sheakly against David Carlisle on the 27th of June 1828, for the sum of 200 dollars; and showed that afterwards, upon a *fieri facias* sued out upon

[Scott v. Sheakly.]

this judgment to September term 1831, the sheriff of Mercer county returned a levy in the following terms—"Levied on all the right, title and interest of the defendant of, in and to eighty acres of land, more or less, situated in Sandy Creek township, *adjoining of and* the same piece and tract of land on which Georgetown is situated. Improvements, about thirty-five acres cleared and fenced, all in bad repair; and a *frame house* and *grist mill.*" An inquisition was also returned by the sheriff, condemning the land embraced within the levy to sale; and upon a writ of *venditioni exponas* sued out to December term 1831, he sold it in due form to the plaintiff for 910 dollars; and accordingly made out and acknowledged a deed for the same to the plaintiff at a court of common pleas held in Mercer county in the June following.

The defendant on his part offered to prove, by George Sheakly the plaintiff in the judgment under which the sheriff sold the land levied on, the *instructions* which he gave the sheriff in respect to making the levy; the interest that he directed him to levy on; and further, to show by him what land was actually embraced within the terms of the levy. The plaintiff's counsel objected to all this evidence, and the court sustained their objection as to giving in evidence the instructions of the plaintiff in the execution about making the levy, and what he directed the sheriff to levy on; but admitted the testimony so far as it was offered to prove what was embraced within the terms of the levy: and to this opinion of the court the plaintiff's counsel excepted. The defendant then showed, by the evidence which he produced, that after the entry of the judgment against Carlisle, and before the execution was sued out on it, Carlisle had sold a number of the town lots embraced in his conveyance from Sheakly to divers persons, who had enclosed and improved them by putting up valuable dwellinghouses and other buildings upon them before the levy was made, while the remaining lots undisposed of and belonging to Carlisle at the time of the levy were chiefly enclosed with the other cleared land which he bought of Sheakly and divided into fields, and used and cultivated by him as a farm. The frame house mentioned in the levy, which is upon lot No. 46, was shown to be the dwellinghouse that had been used and was connected with the farm; and that the grist mill which is also mentioned in the levy, stands upon lot No. 22.

*Sullivan* and *Pearson,* for the plaintiff in error.

The parol testimony in relation to the levy was not admissible. The extent or intent of the levy could not depend upon the subsequent assertions of a witness that this lot or that was not embraced. If it was a matter of law to be determined by inspection of the writ itself and other matters of record, it was wrong to receive parol evidence to put upon it a construction. The levy was upon all the land conveyed by Sheakly to Carlisle. This lot, No. 32, was conveyed. The judgment was a lien upon the whole tract. The purchaser

[Scott v. Sheakly.]

would therefore infer that he was buying the whole. The levy was his notice, and it led him to that conclusion. Parol testimony, therefore, should not have been received to exempt a portion of the property and thus curtail the levy, although it might have been admitted to show the situation of the property. Parol evidence should have been received to show the extent of the improvements. *Whart. Dig.* 499.

*Holstein*, for the defendant in error.

The town plat contains about twenty-five acres. After the judgment was obtained against Carlisle, he sold about fifteen lots, upon which improvements were erected of the value of from 10,000 to 15,000 dollars. No. 32 was one of the lots thus sold. Parol evidence is admissible to explain the extent of the levy. Here it did not contradict the levy, and was therefore properly received. As the levy contained the words "adjoining of" Georgetown, it did not embrace the lots in the town. Those lots had improvements erected on them which were not described in the levy; while it contained a description of the improvements on lots that were levied upon. Swartz *v.* Moore, 5 *Serg. & Rawle* 260; Hall et al. *v.* Benner, 1 *Penns. Rep.* 402.

KENNEDY, J. (after stating the case) delivered the opinion of the Court.

Several matters have been assigned for error, the first of which is the exception taken to the opinion of the court on the admission of evidence. So far as the defendant offered to give evidence of the *instructions* of the plaintiff in the execution to the sheriff, in regard to making the levy and the interest or estate that he should levy on, the court decided in favour of the plaintiff by rejecting the evidence; and I think very correctly too: but so far as the evidence offered to be given tended to show what property was embraced within the terms of the levy, the court decided in favour of its admission; and this, if there be error in it, is the only thing in the opinion of the court on this point, that the plaintiff can complain of, because the other matters were ruled in his favour. Then with respect to parol evidence being admissible for the purpose of showing what was included within the description contained in the levy, and whether the house and lot of ground in question were within it or not, it seems to me impossible that a doubt can be entertained of its admissibility. It *is* only by such evidence that the locality of the property described in the levy can be ascertained and identified; and as the lot in controversy is not specifically described in, or made a part of the levy, it must be obvious that whether it be actually embraced within it or not, must be determined by means of parol evidence. The reasonableness of this principle seemed to be rather admitted by the plaintiff's counsel in the argument; but it was objected that, under the decision of the court admitting the evidence offered on this point,

[Scott v. Sheakly.]

other evidence was given altogether inadmissible in its character; and that the court, in their charge to the jury, took notice of it as if it were properly admissible, and entitled to consideration by the jury in forming their verdict.   If any such evidence were admitted, it certainly does appear from the record of the case to have been done not through any error or mistake of the law on the part of the court. And it cannot be that a judgment is to be reversed, because evidence, not strictly admissible on the issue joined between the parties, was given by one party without objection from the other, and afterwards commented on by the court to the jury as if it were properly admissible.   Beside, this objection does not appear to be comprehended in any of the errors assigned.   The judgment cannot, therefore, be reversed on the first error assigned.

The second error is an exception to the charge delivered by the court to the jury, on certain points submitted by the counsel of the plaintiffs.   So far as questions of law were involved in these points, they were correctly answered.   But some of them were clearly questions of fact, and therefore came exclusively within the province of the jury to decide them according to the evidence : as in the third point, where the court was requested to charge the jury, "that the levy embraced all the interest of Carlisle in the tract of land bought from George Sheakly which was bound by the judgment, including Georgetown."   Now whether the levy did embrace all the land purchased by Carlisle of Sheakly which was bound by the judgment, or not, was certainly a matter of fact to be decided by the jury from the evidence given.   By comparing the description of the land contained in the deed and thereby conveyed from Sheakly to Carlisle, with the description of the land contained in the levy, I should say that they were not the same ; and whether either included the lot in question was a fact which could only be determined by the aid of parol evidence, because it is not pretended that it is specifically mentioned or described either in the one or the other.   The court, then, were not bound, and indeed could not, without usurping the province of the jury, give such direction as was requested, in this particular, to the jury.

The questions, whether the lot of ground in contest was embraced within the levy, or not, and how far the parol evidence given on the trial was to be regarded in deciding it, comprehend every thing involved in the points submitted by the plaintiff's counsel to be answered by the court.   It being admitted on the trial that the land in dispute was one of the lots of Georgetown, No. 32 in the plan of the town, and that it was not disposed of by Sheakly prior to his conveyance to Carlisle, nor reserved by Sheakly in his deed ; it was therefore contended by the plaintiff's counsel, that it was necessarily embraced in the sheriff's levy; because, as is alleged, the levy expressly describes the land taken in execution as being "the same piece and tract of land on which Georgetown is situated."   If this were really so without more, the conclusion contended for by the

[Scott v. Sheakly.]

plaintiff's counsel, would perhaps be more plausible. But it seems to me that the description in the levy is susceptible of a different construction, and that it may as well be read in such a way as to exclude the lots of the town altogether, as to give it the meaning contended for by the plaintiff's counsel, only so far as the lots of the town are specifically called for, which seems to be the case in respect to the lot No. 46, on which the farm house stands, and lot No. 22, on which the grist mill is erected.

In order to render the words of the levy intelligible and to make sense of them, they must undergo some change. The words of the levy are, " all the right, title and interest of the defendant of, in and to eighty acres of land, more or less, situated in Sandy Creek township, adjoining of *and* the same piece and tract of land on which Georgetown is situated, &c." Now the words, " adjoining of and the same piece, &c.," are unmeaning, or rather perhaps involve a contradiction; because to say that a piece or tract of land is the *same* land that it *adjoins*, is absurd and cannot be; yet this would seem to be the literal meaning of the words used in this part of the levy, if they can be said to mean any thing at all. It may be fair, however, notwithstanding this apparent absurdity, to presume that something rational was intended by the introduction of them. But in order to get at that intention, it is necessary to change the form of them and either to supply something that is wanting, or otherwise to remove what may seem to have been introduced unnecessarily, through want of capacity perhaps to put the matter in writing in intelligible form. By striking out the copulative " and" between the words " adjoining of" and the word " same," the description becomes at once not only perfectly intelligible but sensible ; and will then read thus : " all the right, &c. of the defendant of, in and to eighty acres of land, &c. adjoining of the same piece and tract of land on which Georgetown is situated." It is easy to imagine that the word " and" may have been inserted here inadvertently or ignorantly; but it is utterly impossible to supply any words that are wanting that would make sense by retaining the particle "and," and at the same time fulfil or meet with certainty the intention of the sheriff when he committed the levy to writing. If the word "and" be rejected as surplusage, the town lots will necessarily be excluded from the levy, with the exception of those whereon the fiame house and grist mill are erected, which are particularly called for in the close of it. The only objection I see to this form of rendering the language of the levy is, that the natural import or meaning of the words, " the same piece or tract of land on which Georgetown is situated," must be the same with the one hundred acres conveyed by Sheakly to Carlisle ; and hence the levy would exclude all the land to which it appears Carlisle had at that time any claim there, and consequently might render it entirely inoperative. To this, however, I think it might be answered, without doing much violence to the true import of these words, if it should be found necessary in order to avoid such

[Scott v. Sheakly.]

a result, that they ought to be confined to mean merely the ground plat of the town, and not the tract of land itself as it was before the town was laid out and taken from it.    But as this construction of the levy does not seem to be necessary in order to support the charge of the court below to the jury, in answer to the points submitted by the plaintiff's counsel, I do not wish to be understood as deciding positively in favour of it.    For I am satisfied that the circumstances given in evidence, when taken in connection with any rational construction that can be put on the levy, are amply sufficient to show beyond all doubt, that the lot of ground in question, as well as all the town lots sold by Carlisle and improved by the erection of building thereon before the levy was made, were not intended and cannot be considered as embraced within it.    The terms of the levy seem to be completely satisfied, by giving to it all the unimproved lots retained by Carlisle and enclosed within his fields and occupied as part of his farm, together with the lots on which the dwellinghouse and mill stand, with the out buildings used as appurtenant thereto. The purchaser will thus obtain the full quantity of land called for by the terms of the levy, and perhaps more, as well as all the buildings and improvements to which there is the slightest reference in it. The circumstance of the *frame house* and *grist mill* being particularly specified in the levy, without naming any other building whatever, is powerful evidence to show that houses and buildings separate and distinct from them were not intended to be included within it. The maxim *expressio unius est exclusio alterius* applies with full force here.    From the parol evidence given on the trial, it appeared that as many as seven or eight of the town lots embraced within the deed of conveyance from Sheakly to Carlisle, had been disposed of by the latter, upon which valuable dwellinghouses and other buildings were erected at the time of the levy; yet all these may be claimed by the plaintiff under his purchase at the sheriff's sale with as much propriety as the house and lot in question.    This evidence, taken in connection with the terms of the levy, was even more than sufficient to satisfy any reasonable mind, that the lots thus improved were not included in the levy, and that the plaintiff, under his purchase at sheriff's sale, could have no right to them either in law or equity.

As was there was no attempt on the part of the plaintiff to controvert the truth of this parol evidence, the court below were warranted in telling the jury that the plaintiff could not recover; and this disposes of the third and last error assigned.

Judgment affirmed.