# Sergeant *against* Ford.

Loose conversation at a sheriff's sale respecting the estate levied and offered for sale, cannot affect the amount of interest which the purchaser takes under his deed, unless there be fraudulent misrepresentations, with a view of buying at a price less than the value, and it is purchased under such influence.

A judgment will not be reversed for the admission of illegal evidence, which could have had no influence in the result of the cause.

A deed of husband and wife to their son for a tract of land, " excepting twenty-one acres for and during his natural life, bounded, &c., and also one-half of all the hay and one-third of all the grain that may be raised on the residue of said tract during his life; and if he should die before his wife, she then to receive one-fourth of the hay and one-sixth of the grain for and during her natural lifetime, and then the above reservation to cease and not till then." *Ruled,* that the reservation of the twenty-one acres was for the joint lives of the husband and wife and that of the survivor.

ERROR to the District Court of *Crawford* county.

John Sergeant against Hopewell Ford. This was an action of ejectment for twenty-one acres of land, in which the plaintiff gave the following evidence :

A deed from Thomas Ford and Hopewell his wife, dated 17th of May 1831, to Charles Ford and his heirs, for one hundred and twenty-one acres, bounded as follows, &c.; then follows thus, (" excepting twenty-one acres for and during his natural life, bounded as follows, beginning at James Ford's and running north and south, east and west, so as to include the dwelling-house and barn, with the orchard; and also one-half of all the hay, and one-

third of all the grain that may be raised on the residue of said tract during his life; and if he should die before his wife Hopewell, she then to receive one-fourth of the hay and one-sixth of the grain, for and during her natural lifetime, and then the above reservation to cease, and not till then.")

A judgment in the Common Pleas of Crawford county against Charles Ford, levy, sale by the sheriff, and deed dated 15th of August 1835, to the plaintiff for the following piece of land, viz.: "one hundred acres of land in Woodcock, bounded as follows, on the north by land of James Humes, on the west by land of James Ford, on the south by land of Swift and Moodie, and on the east by land of James Greenlee, on which is erected a frame dwelling-house, barn, &c., which has been seized upon as the property of Charles Ford, 2d of February 1835." (The description in the *venditioni exponas,* advertisement and sheriff's deed is the same.)

· B. T. Swift was then called, and proved that the boundaries of the land sold corresponded with those in the deed from Thomas Ford and wife to Charles Ford, including the one hundred and twenty-one acres, and the death of Thomas Ford before the sheriff's sale.

The defendant then called Jacob Kepler to prove as hereinafter set forth: to this testimony the plaintiff objected; the court overruled the objection and admitted the testimony, and at the plaintiff's instance sealed a bill of exceptions.

Jacob Kepler. I went with Sergeant to show him the land before the sale. Think I proposed going. Showed him how it lay and its quality; told him if he bought the one hundred acres he could make some arrangements about the twenty-one acres. We went into defendant's house. Sergeant asked her what she would take for it. No answer as to price given. She had occupied the twenty-one acres separately from the farm. I told Sergeant the situation the land was in. Was one hundred acres; one hundred and twenty-one acres in the whole. That one hundred acres was levied on or selling. That he could make a bargain with old Mrs Ford or Charles for the twenty-one acres. Sergeant was a stranger. I pointed out the one hundred acres and the twenty-one acres the time we were looking at the land. I attended the sale and bid off the land for Sergeant at his request. A verbal notice was given that the twenty-one acres was not selling. I understood it so. Sergeant went in and paid some money and signed the sale bid. Sergeant bid two or three times himself. The sheriff and Charles Ford went into my entry, (referring to the time the levy was made.) I could not hear distinctly what was said. The sheriff asked him what he had. What followed I could not hear. I heard Ford mention the twenty-one acres to sheriff, but not his mother's name. A year or so after the sale, Sergeant claimed the land.

[Sergeant v. Ford.]

Cross-examined—I pointed out the two sides of the twenty-one acres with my fingers. Did not know, except by hearsay, what Mrs Ford claimed. She said she had twenty-one acres during her life, and share of the crops. Don't know what she said of her title; the way I understood was that twenty-one acres altogether was reserved. I told Sergeant before the sale that the twenty-one acres were not selling. I had no authority for telling him so; was mere conjecture; was in part from conjecture and from what Charles Ford told me. I did not talk with the sheriff about it. Don't recollect of seeing the levy on the writ. I saw it advertised. Can't tell really the notice of or its purport. Good many persons round bidding; think Peter Ford. I bid as Sergeant told me. I had insisted on his buying. I was listening to the conversation between the sheriff and C. Ford. Heard nothing of reservation made. Notice at the sale was for Mrs Ford's benefit.

James Ford. I was present the day of sale, and had a written notice which my mother requested me to put up. I gave notice that but one hundred acres of the one hundred and twenty-one acres was selling. I told Sergeant the twenty-one acres was not advertised; that the deed to C. Ford was for one hundred and twenty-one acres, and but one hundred acres were selling. That on the one hundred acres were two houses and barn, and on the twenty-one acres a house and barn not described; that mother had legal claim to this twenty-one acres as long as she lived. C. Ford said mother should have the use of the twenty-one acres as long as she lived. She has occupied it since father's death, separate from as far as fence goes. There are different fields included in the twenty-one acres.

The plaintiff then called again

David M. Fadden. I was the sheriff. No reservation was made by C. Ford, at the time of giving the levy, of twenty-one acres; his mother's name was not mentioned. Nothing was said till after the sale. No recollection of notice of reservation of twenty-one acres.

The plaintiff offered to ask the witness, whether he sold all the land embraced within the outside boundaries of the tract. This being objected to, was overruled, and a bill of exceptions filed.

James Throop. I was crier at the sale. Notice was handed to me by Peter or James Ford. After crying some time, I gave proclamation of 21 acres old lady claimed during her life. Sergeant said, he wanted to buy. Got up to $400 or $500 when this proclamation seemed to stop the bidding. After some consultation, was started again, and run up to $1000. Sergeant then said, he did not want to buy a pig in a poke, and, if any reservation was made, he did not want to buy. A further consultation took place, and, after a little, Sergeant said, so that all could hear, that, if he got all the land, he would bid $1 more.

[Sergeant v. Ford.]

The plaintiff requested the court to charge the jury upon the following points :

1. That the reservation in the deed of May 17, 1831, from T. Ford and wife to C. Ford, of the life-estate of 21 acres, extends but to the life of Thomas Ford, and not to his wife.

2. That the levy by the sheriff is to control; and that all the land embraced in the boundaries there given, and which corresponded with the boundaries in the deed from T. Ford and wife to C. Ford, passed by the levy, sale, and sheriff's deed, to plaintiff.

3. That no declarations by Mrs Ford, or by others for her, at the time of sale, that she had a life-interest in the 21 acres, and notice to that effect, can avail her, if she has not a life-estate in the reservation given to her.

THOMPSON, President, instructed the jury, in answer to the plaintiff's first point, that the deed referred to reserved an estate in the 21 acres for the joint lives of the husband and wife and that of the survivor, and therefore the verdict should be for the defendant. The answers to the other points are, therefore, immaterial.

*Derrickson,* for plaintiff in error, argued that the true construction of the deed gave no estate in the 21 acres to the wife. The amount of interest, or quantity of land which is sold by the sheriff, cannot be controlled by declarations made, or circumstances occurring at the time of sale, nor by the understanding, knowledge, or ignorance of the bidders. If a sale be made, what is sold can only be determined by a reference to that which the record contains. Misrepresentations, or other irregularities, can only be cured by an objection to the acknowledgment of the deed. If the sale be consummated by the delivery of a deed to the purchaser, it must contain, upon its face, the only evidence of what was sold. It was, therefore, clearly erroneous to admit the testimony of what was said and done at the time of the sale. 4 *Watts* 442.

*Riddle,* for defendant in error. A deed, like every other instrument containing the evidence of a contract, must be construed according to its common sense meaning, taken in connexion with the object the parties had in view. What, then, did the grantor mean, by "the above reservation," but the provision which he had made for the maintenance of himself and wife, while they lived. The "reservation" embraced every thing which was not conveyed immediately.

The opinion of the Court was delivered by

HUSTON, J.—This was an ejectment by John Sergeant for 21 acres of land with the appurtenances. The dispute arose on the following facts:—On the 17th of May 1831, Thomas Ford and

II. — L *

Hopewell his wife conveyed by deed to Charles Ford, their son, and his heirs, 121 acres of land, bounded, &c., and describing it exactly, " excepting 21 acres for and during his natural life, bounded as follows, beginning at James Ford's, and running north and south, east and west, so as to include the dwelling-house and barn, with the orchard, and also one-half of all the hay, and one-third of all the grain that may be raised on the residue of said tract, during his life; and if he should die before his wife Hopewell, she then to receive one-fourth of the hay and one-sixth of the grain for and during her natural lifetime, and then the above reservation to cease, and not till then."

The court were right in their construction of this deed; although the first part looks like a provision for the father alone, it is explained by the concluding part. The obvious meaning is a reservation of the 21 acres, and house, barn, and orchard, during life, by the father, and an engagement by Charles to deliver the share of hay and grain to his father during his life, and a less share to his mother, if she was the survivor. " She to receive," is insensible, unless the son was to deliver to her. The stipulation about shares of produce is contract, as much as a lease of a farm, he paying a proportion of the produce. The reservation of the 21 acres is to last as long as Hopewell's life, and then to cease; this gave the residue to Charles at once, and the reversion of the 21 acres on the death of his father and mother. He could sell no more, and the sheriff could sell no more than he had; and the purchaser got no more. The levy described it by those who bounded the 121 acres on every side, as was equivalent to a description by courses and distances all round. The purchaser then got all the estate, neither more nor less than Charles had.

In strictness, the testimony of Kepler was not evidence. The levy, *venditioni exponas*, and deed, pass the title; they are written, and together make record evidence of title to the purchaser. It never can be permitted that what third persons thought or said, can affect a title created and evidenced by records. Fraud, which vitiates everything, may make exceptions: as when a person intending to purchase, and who does purchase publicly at a sale, represents that only a certain part is selling; but what officious third persons say, or the talk of bystanders, cannot with safety be permitted to enlarge or limit the levy. It is not, however, a cause of reversing in all cases that immaterial evidence has been heard, if it has no effect on the opinion of the court, or decision of the jury. Counsel too often offer a witness to prove a little more or a little different from what he does prove; and if it does no harm, if the case eventuates as it must have done if no such testimony had been given, it is no reason for reversing.

I will observe, if the levy does not mention all the land the defendant has in the tract levied, or if it and the advertisement do not fairly describe the property, the defendant may, by appli-

[Sergeant v. Ford.]

cation to the court before the sale, obtain permission or direction to the sheriff to amend his levy so as to make it correct. No objection can safely be heard after the whole is completed, money paid, and a deed made and acknowledged. I mean no objection merely to forms, and which could have been made, which were known, or parties were bound to know and make at a previous time. I am not sure I understand some part of the opinion of the court. He says, if the proof shows that the land in controversy was not levied on or sold, it does not pass, although it *is* included in the outside boundaries of the tract of 121 acres. In another place he had said, but even if included in the levy, and intended so to be, the plaintiff could not recover against any existing life-estate. Now, I suppose him to mean the same thing in both sentences: that is, if within the clear description of the levy there was a house or lot not the property in possession or reversion of defendant in the execution, it would not pass; and clearly it would not, for the sheriff cannot give title to what was not the defendant's. But if he means to say that part of what is defendant's property, and is clearly within the levy, does not pass, I do not agree with him. It does pass, as I have said, unless prevented by fraud in the purchaser, or of which he knew and concealed for his own gain. See *Streaper* v. *Fisher* (1 *Rawle* 155); *Grubb* v. *Guilford* (4 *Watts* 244); *Swartz* v. *Moore* (5 *Serg. & Rawle* 257); *Scott* v. *Sheakly* (3 *Watts* 50). Some parts of the charge on hypothetical points are not material in this case. On the main point, material to a decision of this case, there is no error. The matter trying was whether Sergeant could, *at present*, recover the possession of the 21 acres, or must wait until the death of Hopewell Ford; on this the opinion of the court was correct. As to *obiter dicta*, on matters argued, which *dicta* we do not perhaps understand, we have nothing to do with them, and give no binding opinion on them.

Judgment affirmed.