## Porter *against* M'Ginnis.

Where land is sold by the sheriff, and a person who claims title to it, in good faith, gives notice that the defendant in the execution, as whose property it is sold, has no title to it, and he afterwards becomes the purchaser, he is not thereby estopped from setting up the title thus purchased, to protect himself from an action of trespass *quare clausum fregit.*

*Quære*, whether a non-resident disseissor acquires title by the Act of Limitations to more land than is actually enclosed and cultivated.

ERROR to the Common Pleas of *Clarion* county.

This was an action of trespass *quare clausum fregit* by James J. M'Ginnis against Alexander S. Porter, in which the defendant pleaded not guilty and *liberum tenementum.* The cause was so imperfectly brought up as to render any other statement of it than that contained in the opinion of the court impracticable.

*Howe*, for the plaintiff in error, cited 4 *Watts & Serg.* 78 ; 2 *Watts* 384 ; 7 *Watts* 400.

*Pearson*, for the defendant in error, cited 2 *Watts & Serg.* 122 ; 1 *Watts & Serg.* 297, 128 ; 2 *Watts* 66.

The opinion of the Court was delivered by

ROGERS, J.—The facts of the case are so imperfectly stated, that the application of that part of the charge which relates to the first error assigned is not very obvious. The plaintiff's title, as we understand it, depends upon the Act of Limitations, and on that point the court in substance instruct the jury that residence is not necessary to make an adverse possession; that where land is enclosed and cultivated, it may be adverse so as to give an indefeasible title to the occupant. And in this position the court is sustained by *Johnston* v. *Irwin* (3 *Serg. & Rawle* 291). But the charge is predicated on the hypothesis that the plaintiff has marked his boundaries; for without some designation of the extent of the claim, either by a private or official survey, user of the property as an entire tract or payment of taxes, a disseisor obtains title only to the part cleared and cultivated. The court say, "if the jury believe that James M'Ginnis went upon the land in 1807, and defined his boundaries so as to embrace the *locus*, and continued

with those claiming under him to occupy it in the manner stated by the witnesses, for a period of more than twenty-one years, the title under the Franklin College is barred by the Statute of Limitations, provided James M'Ginnis had only as much land within those boundaries as he could hold hold by settlement and improvement. If he sold part of his claim to his son, James Johnston M'Ginnis, in 1815, and procured a warrant and survey for the residue, for himself, a family residing on the warranted tract would be a sufficient actual possession of the whole tract, if the clear land was continued to be cultivated on both parts of the tract annually, by James M'Ginnis and James J. M'Ginnis, or others for or under them, during the said period of twenty-one years."

But granting the charge to be correct, there is no evidence that I can discover that James M'Ginnis defined his boundaries when he entered on the land in 1807, or that there has been any designation of the extent of the claim by James Johnson M'Ginnis since his purchase in 1815. But this ought to be shown clearly where he intends to extend his title beyond his enclosures, and to bring his case within the principles decided in *M'Call* v. *Neely*, (3 *Watts* 70); *Crisswell* v. *Altemus*, (7 *Watts* 581); and *Bell* v. *Hartley*, (4 *Watts & Serg.* 32). So, as the cause goes down for another trial, it may be well to inquire whether the principles settled in the cases cited apply where the disseisor does not reside on the property disseised, but on another tract; or in other words, whether a non-resident disseisor acquires title by the Act of Limitations to more land than is actuallly enclosed and cultivated. This is believed to be a new point, about which it would be premature to express an opinion.

The court further instructed the jury, "that if they believed Benjamin Junkin, when the sheriff's sale was made of the land alleged to be Robert M'Ginnis's, and who now claims the land by virtue of the sheriff's deed, gave notice that Robert M'Ginnis had no title to it, but that he (Junkin) was the owner, and that he became the purchaser under these circumstances, he is estopped from setting up that deed to defeat the plaintiff's cause of action." The property was seized and sold by the sheriff as the property of M'Ginnis, and Junkin became the purchaser, after having given notice that M'Ginnis had no title; but in this we see nothing which estops either Junkin or the person claiming under him from availing himself of the title so acquired; for where a person acts *bonâ fide*, there is nothing to prevent him from giving notice of the debtor's defect of title, and afterwards becoming the purchaser. A man, surely, may purchase his peace, and prefer a small sacrifice, rather than run the risk of long and vexatious litigation. It is very true that fraud may vitiate such a sale, and redress may be had by an application to the court either by the debtor or the creditors. In a proper case, the court will order a re-sale of the premises, and

[Porter v. M'Ginnis.]

indeed, under certain circumstances of palpable fraud, no title passes to the fraudulent purchaser, as against either the debtor or his creditors. But here it must be observed, that neither the debtor nor the creditors complain of the sale, but a third person, who has not been injured, attempts to avail himself of it by way of estoppel.

Taking it in the most unfavourable point of view for the purchaser, the title can only be avoided at the instance of the debtor and creditors. It is not void, but voidable only. It cannot be alleged that Junkin was guilty of fraud, for the notice was strictly true, and, we are bound to suppose, given in good faith. Both plaintiff and defendant concede that Robert M'Ginnis, the debtor, had not a shadow of title. *Sergeant* v. *Ford*, (2 *Watts & Serg.* 122); *Foulk* v. *M'Farlane*, (1 *Watts & Serg.* 297); and *Gilbert* v. *Hoffman*, (2 *Watts* 66), are cases of actual fraud, and are therefore materially different from the case in hand. There is no evidence of fraud which can injure the title of the purchaser, even as against the parties in interest, much less is there anything proved which can enure to the benefit of a stranger. Knowing that the title exposed for sale was worthless, it was the duty of the owner to give notice of it, so as to put purchasers at the sheriff's sale on their guard. Nay, if he had omitted to do it, it would have jeoparded his own title. It would, therefore, be unreasonable to hold that he was estopped by an act which was only a prudent precaution, from setting up the title acquired by the purchase.

Judgment reversed and a *venire de novo* awarded.