## The Susquehanna Boom Company *et al.* *versus* Finney *et al.*

1. A boom company was bound to maintain a boom, keep guard of lumber going into it, to have the logs that were rafted out counted by a measurer appointed by the court—the logs to be marked, and the company to receive tolls. A number of logs passed into the boom of which two persons claimed the ownership. In replevin by one of them against the company for "329,760 feet, more or less," the sheriff returned "replevied, defendant gave bond and retained the property," and the defendant pleaded "property:" *held*, that the defendants were not concluded by the return and their plea from showing the actual amount of the lumber.

2. Knowles *v.* Lord, 4 Whart. 500, commented on and distinguished.

3. Vagueness and want of precision in a return may furnish an exception to the general rule of the conclusiveness of records and returns.

4. A contract was to sell and deliver logs in the spring of 1863 at a place named; the low water prevented a delivery at that time; the vendor afterwards sold the logs to another, and in 1864 put the logs at the place named for delivery in the first contract. In a contest between the two vendees: *held*, that the delivery consisted both of the act putting the logs at the place and the intention of the vendor to deliver, and it was a question for the jury.

March 26th and 27th 1868. Before STRONG, READ, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Error to the Court of Common Pleas of *Lycoming county*: to January Term 1868, No. 197.

This was an action of replevin issued July 15th 1864, by A. C. Finney against the Susquehanna Boom Company.

The *præcipe* was as follows:—

"Issue writ of replevin for three hundred and twenty-nine thousand seven hundred and sixty feet of white pine saw logs, more or less, marked or stamped 'E,' on the end or ends of each log, of the value of fifteen dollars per thousand feet, the property of A. C. Finney, which has been seized and unjustly detained by the said Susquehanna Boom Company."

The sheriff returned "replevied, defendant gave bonds and retained the property."

On the 20th of August 1864, the defendant pleaded "non cepit and property."

On the 29th of November, Anderson Harvey, who claimed to be the owner of the property, was made co-defendant, and pleaded "non cepit and property."

B. C. Bowman was afterwards added as plaintiff.

The Boom Company was incorporated March 26th 1846, Pamph. L. 190. They were authorized to erect and maintain a boom in the Susquehanna river, at Williamsport, for stopping and securing logs, &c., floating on the river, and required to keep the boom sufficiently strong to secure the lumber therein; to guard the passage in the boom by day and night, so that no lumber be permitted to escape; to raft all logs, &c., in the boom securely

and faithfully, &c., for a time designated, and if the owner within the time had not removed the logs, the company to remove them to a safe place at the expense of the owner, and be accountable to him for an injury from their neglect. They are entitled to toll or boomage for their services, and have a lien upon the lumber for toll and expenses. The logs rafted out of the boom are to be counted or measured by a person appointed by the Court of Common Pleas. The owners of logs intended to go below the boom must give notice of their marks, &c. By the Act of April 10th 1862, § 1, Pamph. L. 383, persons engaged in lumbering on the West Branch of the Susquehanna may adopt a mark, and furnish it to the prothonotary of the Court of Common Pleas of Lycoming county, &c., to be filed of record by him; and he shall give a certificate of the same to the person filing it, or others demanding it, as evidence of the right of the person filing to the mark, &c.

The logs for which the replevin was brought were alleged to be in the company's boom.

On the trial before Jordan, P. J., the plaintiff gave in evidence the following agreement, dated May 11th 1864, between G. W. Caldwell, of the one part, and A. C. Finney, of the other part, &c., by which "the said G. W. Caldwell, for the consideration hereinafter mentioned, hereby sells, conveys and delivers to the said A. C. Finney, 329,760 feet of saw logs, lying and being in Clearfield creek, in Flynn's drive, marked with an 'E,' being the same lot of logs put in by the said G. W. Caldwell at Glen Hope, and scaled by John Shoff.

"In consideration whereof, the said A. C. Finney agrees to pay the sum of $9 per thousand feet, in manner following, to wit: $500 in hand, $1280 in ninety days, and the balance in six months from this date."

The plaintiff's witnesses testified that the logs got by the plaintiff, amounting to 329,060 feet, were scaled; they had been hauled down Cooper's run, and were lying just below the mouth of the run, on the banks of Clearfield creek; over half of them were taken out in the winter of 1863, and the remainder in the winter of 1804; they were driven by Flynn to Williamsport, and marked "E;" were started in March or April 1864, from Glen Hope.

The defendant gave in evidence the following agreement:—

"Glen Hope, February 28th 1863.

"Whereas, G. W. Caldwell, of Glen Hope, has now on and in vicinity of the bank of Cooper's run, above the Cooper mill, 400,000 feet of saw-logs, or more, which he proposes to sell at the price of four dollars and sixty-two cents per M. feet, scaled straight and sound by Scribner rule, and to be delivered free of extra charge on the main Clearfield creek, in good time

[Susquehanna Boom Co. *v.* Finney.]

for P. Flynn to drive with the main drive to Williamsport Boom this coming spring (of 1863); and also hereby agrees to sell the same to B. Wait, of Williamsport, the said 400,000 feet, and as many more with them as he can put in this coming spring as above, at above price, and deliver as above; and in consideration of above agreement, the said B. Wait hereby agrees to purchase the said above-mentioned logs, delivered as above, for A. Harvey, of Williamsport, and pay therefor as above, as follows, $1000 down, the receipt of which is hereon endorsed, and enough more to make two-thirds of the whole amount at or near the time the said 400,000, or more, shall be delivered as above, in said Clearfield, and the balance in good negotiable paper, at four months, dated at the time of said delivery in said Clearfield creek.

"It is also hereby agreed, by both parties, that John Davis, or Mr. Bell, or both, shall scale the said logs in accordance with the above contents; also that the mark of G. W. C. shall be well stamped on each end, and that the cost of both scaling and marking shall be paid by the parties equally."

Caldwell's receipt for $1000, and Wait's assignment to Anderson Harvey, were endorsed on the agreement.

Also letter of April 6th 1863 from Caldwell to Wait. This letter speaks of being in answer to one from Wait about the logs. Caldwell, after saying he had used all his endeavors to get the logs, says: "If the logs cannot be got in this spring, I think I can next; and if you must have your money you paid on them, I think by some difficulty I can repay you, or you may continue to claim the logs."

In a letter of July 22d 1863 to Harvey's attorney, W. Wallace, Esq., Caldwell says: "I used all the means in my power to have the logs put into water, and failed. I have offered to give his money back, or let him hold his claim on the logs until I get them into the water, and give him security for the same."

In a letter to Harvey of September 27th 1863, Caldwell says: "I am quite as much disappointed as you are, and am sorry that I failed in filling my contract with you. I used no manner of deception, and felt no disposition to disappoint you; and I am willing to pay you your money back again at any time, with interest for the use of it, or I will put in logs, this coming spring, to satisfy the claim of $1000, with interest up to that time. I wrote to Wallace and told him that I wanted no trouble in the matter, and that I felt disposed to do what was right."

They gave evidence that a number of logs, about April and May 1864, marked "E," came into their boom and were delivered to Harvey; a number of logs passed by them down the river in consequence of an injury to the boom by a flood. Wait testified that in January 1864 the logs in dispute were at the place on

[Susquehanna Boom Co. *v.* Finney.]

Clearfield creek, where those he had purchased were to be delivered; there was no freshet in 1863.

The defendants made the following offers of evidence, which were rejected, and several bills of exception sealed:—

1. That the quantity of "E" logs in the boom at the time of the issuing and service of this writ was unknown both to plaintiff and defendant, and that this could not be ascertained by any human means till the same were rafted out and scaled. To be followed by proof that the same were afterwards rafted out of said boom and counted and measured and their quantity ascertained by the boom scaler appointed by the Court of Common Pleas of Lycoming county, and that the real quantity did not exceed 238,000 feet.

2. That 50,000 feet of the logs marked "E," being part of the same logs in controversy, were stopped at the West Branch Boom at Lock Haven in April and May 1864; that the same were sawed by S. M. Beckford, and delivered by him to the plaintiff in December 1864; also that 30,000 feet of said logs marked "E" escaped the Susquehanna Boom in the April and May floods of 1864, and were taken up by the plaintiff at points below the Susquehanna Boom, and were manufactured and converted by the plaintiff to his own possession and use after the issuing and service of this writ of replevin.

3. The quantity of logs marked "E" which were rafted out of said boom and delivered to the said Anderson Harvey prior to the issuing and service of this writ of replevin.

4. The quantity of logs with the mark "E," being the same logs in controversy in the action, which came into the boom prior to 11th day of May 1864, the date of plaintiffs' contract.

5. The quantity of logs marked "E" on the end, being the logs in controversy in this case, that came into the Susquehanna Boom prior to the 22d day of July 1864, the day the logs were replevied. This evidence being offered to show the quantity of logs which were actually replevied, as the quantity was then unknown to both parties, as appears by the record.

There was other evidence on both sides on the question of delivery by Caldwell, the value of the logs, &c.

Defendants' points, with their answers, were:—

1. If the jury find that the logs in controversy were put on "the main Clearfield creek," the place mentioned for delivery in the contract of sale to Wait for Harvey, as specified in the terms of said contract, such placing of the logs at the place of delivery under all the evidence in the cause, was a delivery of the logs both in law and in fact to Harvey.

2. If the jury find that there was no actual delivery of the logs to Finney before they came into Harvey's actual possession at and in the boom, and Harvey received them in good faith, without

[Susquehanna Boom Co. *v.* Finney.]

having been apprised that they had been sold by Caldwell to Finney, he is entitled to hold them as against the claim of Finney, and their verdict should be in favor of the defendant.

Answer to 1st point: "The placing of the logs by Caldwell at the place designated in the agreements between Caldwell and Wait, dated February 28th 1863, is evidence of delivery under the contract on the part of Caldwell. But we refuse to instruct you that the delivery of the logs at that place, under all the evidence in the cause, was a delivery of the logs in law to Harvey. Whether in fact they were delivered to him we submit to you under all the evidence."

Answer to 2d point: "If there was no actual delivery of the logs to Finney before they came into Harvey's actual possession at and in the Boom, and Harvey received them in good faith, without having been apprised that they had been sold by Caldwell to Finney, it will not entitle the defendants to your verdict unless you are satisfied from the evidence that there was a delivery of the logs to Harvey by Caldwell, or with his knowledge and consent. As the contract between Caldwell and Harvey was an executory one, and certain things were to be done by Harvey after the delivery of the logs on the bank of Clearfield creek, Harvey was not entitled to possession of the logs until he did what he stipulated to do. If Harvey had actual possession, this actual possession, to avail him and entitle him to your verdict, must have been done with the consent of Caldwell. If there was a delivery to Harvey, then the title was in him. In the language of the Supreme Court, the vesting of title waited upon the delivery."

There was a verdict $3631.59 for the plaintiffs.

The defendants took a writ of error and in seven specifications assigned for error the rejection of their offers of evidence and the answers to their points.

*W. H. Armstrong* and *J. W. Comley* (with whom were *Bentley & Eutermarks*), for plaintiffs in error.—As to the evidence they referred to Knowles *v.* Lord, 4 Whart. 500. The rule stated in that case has been modified: Chalfant *v.* Williams, 11 Casey 214; Bank *v.* Fordyce, 1 Barr 457; Rearich *v.* Swinehart, 1 Jones 238; Barnhart *v.* Riddle, 5 Casey 96; Musselman *v.* Stoner, 7 Id. 270; Zinn *v.* Rowley, 4 Barr 169. As to delivery: Fry *v.* Lucas, 5 Casey 356; Case *v.* Green, 5 Watts 262; Scott *v.* Wells, 6 W. & S. 357; Smith *v.* Smith, 5 Barr 254.

*H. C. Parsons* and *H. W. Watson*, for defendants in error.' As to evidence referred to Knowles *v.* Lord, *supra;* Warner *v.* Aughenbaugh, 15 S. & R. 10; Ruch *v.* Morris, 4 Casey 248; Heffner *v.* Reed, 3 Grant 245; Gibbs *v.* Bartlett, 2 W. & S. 35;

McDowell v. Oyer, 9 Harris 423. As to the delivery: Shaw v. Levy, 17 S. & R. 99; Winslow v. Leonard, 12 Harris 14.

The opinion of the court was delivered May 9th 1868, by

AGNEW, J.—This action of replevin has peculiar features. It was brought against the Susquehanna Boom Company, and this is the first thing to be noticed. It is an incorporated company, authorized to erect and maintain in the West Branch of the Susquehanna an artificial barrier, called a boom, composed of piers and timbers, to intercept and secure the floating logs and lumber driven down the stream. Its duty is to keep guard by day and night, so that no lumber shall escape; to raft all logs and lumber out of the boom securely and faithfully, and secure them below for the owners, and for this service to receive certain tolls and charges. To guard the public against imposition, all logs rafted out of the boom shall be counted and measured by a competent person appointed by the Court of Common Pleas of Lycoming county. The owners of the logs, &c., are required to mark them well, for identification, before they are set afloat, and to register their marks on the books of the company. The boom thus becomes the receptacle of innumerable logs, amounting to millions of feet annually. The logs are sent adrift by their owners in the upper regions of the river and its tributaries, and many are stranded by the way. Those arriving lie in the boom in confused masses, piled and submerged, and how many of each owner's "drive" are caught, no one can tell, until they are rafted out below and identified by their marks. Such is the party against whom the replevin issued, a bailee of the logs of many owners, unnumbered and unknown at the time of the issuing of the writ. The plaintiffs, conscious of these facts, and founding their estimate on the number of feet "scaled" or measured to them on the river above, issued their writ for 329,760 *feet* of white-pine saw-logs, *more or less*, marked or stamped "E" on the end of each log, of the value of $15 per 1000 feet. Anderson Harvey, who claimed the same logs under a prior contract, and whose mills must stop if he failed to obtain his usual supply, procured a "claim property bond," to be given by the boom company, and was afterwards admitted as a co-defendant, to defend his interest. The return of the sheriff was "replevied as within commanded. Defendants gave bond and retained property." The defendants pleaded non cepit and property, and on the trial offered to prove by the boom scaler and others that the quantity of logs marked "E" in the boom at the time of the issuing and service of the writ was unknown to both plaintiffs and defendants, and could not be ascertained by any human means until they were rafted out and "scaled" (that is, the quantity computed by a scale or table of measurement as applied to the dimensions of the logs), and to follow this by proof

[Susquehanna Boom Co. *v.* Finney.]

that they were afterward rafted out and counted and measured by the boom scaler, appointed according to law, and that the real quantity as thus ascertained did not exceed 238,000 feet. They offered to prove also that about 50,000 feet of the logs in controvesy never arrived at the Susquehanna boom, but were stopped above at the Lock Haven boom, and there sawed and delivered to the plaintiffs; and that about 30,000 feet of the same lot of logs had escaped out of the Susquehanna boom before the issuing and service of the writ, and were taken up below, manufactured and converted by the plaintiffs to their own use after the issuing and service of the writ. They further offered to prove by the same officer and others how many of the logs marked "E" had been rafted out of the boom and delivered to Harvey before the issuing and service of the writ. All these offers were rejected on the ground that by the claim of property and return of the sheriff the defendants were fixed for the 329,760 feet of logs stated in the writ. Knowles *v.* Lord, 4 Wharton 500, and kindred cases are cited in support of this ruling.

In the view we take of the case before us, we do not intend to impugn or to shake in the least degree the doctrine of that case; that a defendant in replevin, who claims property in the goods mentioned in the writ, retains them and gives bond for their return and for indemnity, if the property in them be adjudged against him; conclusively admits possession of all the goods, and will not be permitted to contradict the return of the sheriff that the identical goods mentioned in the writ were left in his hands. But if the principle of an ordinary case of replevin, such as that was, should be applied to this case, it would require us to use a mere legal presumption adopted for the furtherance of justice to work the grossest wrong, contrary to the palpable facts and against the common understanding of all the parties and the sheriff himself. When the plaintiffs issued the writ against the boom company, they knew its character and purpose, and that, in the language of the offer, by no human means could the quantity of logs marked "E" be ascertained in the boom until they were rafted out and measured. Mixed with innumerable others, submerged, embedded in the mud, piled and heaped together, and filling the river for a mile or more, no human power could reach them until one after another they were loosened below, and floated out. Had the sheriff gone with his writ to deliver possession to the plaintiffs, what could he do? They could not show him their logs and he could not find them. Well knowing these things, the plaintiffs did not issue their writ for a certain number of logs, but for 329,760 feet of logs *more or less*. What kind of feet were they— lineal or cubic? How many feet more than 329,760, or how many less were there? This number of feet it appears means inch board measure. How many logs were there throughout which

this number of feet was distributed ?　All these questions should be definitely answered, before we can fix the defendants conclusively for 329,760 feet, by board measure, contained in an unknown number of logs.　How can we say conclusively that, " Replevied as within commanded—defendants gave bond and retained the property," means that the defendants had in their possession a certain number of logs containing this specific number of feet ? The return independently of the writ asserts no number and proves none, while the writ itself is vague and uncertain.　It specifies no certain number of logs, and no specific number of feet, but an uncertain number of feet in an unknown number of logs. When we view the character of the boom company, the nature of its duties imposed by law, the impossibility of determining the number of the logs in the boom, the means adopted by law to ascertain, through an impartial officer, the extent of the company's liability and its claims for tolls and charges, and then look at the vague character of the writ and return, and the knowledge of all parties of the state of the case, we must perceive at once that neither the sheriff nor the defendants had any idea that a claim of property and bond could apply to a certain number of logs or a fixed number of feet, but that they were intended to cover and secure what in the due course of the operations of the boom company should be found to be in its possession.　We can conceive of no ranker injustice than to fix upon the defendants, by a forced presumption, a specific liability for the very logs that went into the hands of the plaintiffs, and which never came into the boom or had gone out of it before the writ issued.　The indefiniteness of the writ and return, and the circumstances by which we distinguish this case from Knowles *v.* Lord, are not wanting in analogies, where a similar vagueness and want of precision have formed the ground of exceptions to the general rule.　Thus where a schooner was sold under an order to sell her " together with all and singular her tackle, apparel and furniture, or so much thereof as might be necessary," and the marshal returned that he had sold her, " together with her tackle, apparel, &c.," the deputy marshal was permitted, in an action of trover for certain of her sails, to prove that the sails were expressly excepted and were not sold, notwithstanding the objection that it contradicted the return : Dolan *v.* Briggs, 4 Binney 496.　A return of " levied on grain, household furniture, &c., and left at the plaintiffs' risk," and another return " levied on goods per inventory," were held not to be conclusive of satisfaction : Little *v.* Delancey, 5 Binney 266.

A registry on the 5th of November 1792 of a negro slave, " born some time in May last or the beginning of June," was held to be bad because of its vagueness, as the birth might have been before the 5th of May, and the registry therefore made more than

[Susquehanna Boom Co. *v.* Finney.]

six months afterwards: Commonwealth *ex rel.* Jesse *v.* Craig, 1 S. & R. 23. A sheriff's return to a fi. fa. of "debt and costs paid" made more than two years after the return-day, was held not to be conclusive: Weidman *v.* Weitzell, 13 S. & R. 96. Where a fi. fa. had lain in the sheriff's hands six years, and was then returned *nulla bona*, the return will not preclude evidence to contradict it: Pennock's Ex. *v.* Carr, 1 Rawle 420. A sheriff was held to be competent to prove that a return of "proceedings stayed by plaintiff's attorney," which had been struck out by running a line through it, was his return, and had not been struck out by him: Meredith *v.* Shewall, 1 Penna. R. 495. A return of *nulla bona* to an execution on a judgment against a surety in a replevin-bond, is not conclusive of the sureties' insolvency, in an action against a sheriff for taking insufficient sureties in the bond: Myers *v.* Clark, 3 W. & S. 535. So what property is or is not embraced in a levy which is obscure in its terms, may be shown by parol evidence: Scott *v.* Sheakly, 3 Watts 50 ; Hoffman *v.* Danner, 2 Harris 25; Atkinson's Lessee *v.* Cummins, 9 Howard 479. In two of these cases, adjoiners mistakenly called for by the sheriff's levy were rejected, and land bounded by them excluded. A levy upon three writs against partners, *subject* to a levy on a writ against one of the partners for his individual debt, and sales returned on all, it was held in a proceeding to make distribution that it might be shown that the property was partnership property: Vandike's Appeal, 5 Harris 271. So the real value of property replevied may be proved against the value fixed in the writ: Gibbs *v.* Bartlett, 2 W. & S. 35. Thus there is abundant authority that records and returns which under ordinary circumstances furnish conclusive presumptions of their truth, may, through vagueness, informality and irregularity, be so much impaired in their character, that the presumption is only primâ facie, and can be rebutted by proof. Such we think is the case here. The rejected evidence ought therefore to have been received. It is proper to add that we refused, when this case was here before, to express our opinion on the point now decided, on the ground that the writ and return were not then before us. We discover no error in the answers of the court to the defendant's first and second points. The contract of Caldwell with Wait for Anderson Harvey being executory and dependent, the hauling of the logs and depositing them at the place appointed for delivery was not *ipso facto* a delivery of the logs. Delivery in such a case consists of two acts, the manual act, of placing the property there, and the mental act, or intention to deliver. Without the latter no delivery could be affirmed, and it was for the jury and not for the court to determine with what mind the logs were taken by Caldwell and deposited at the place of delivery. Without an

[Susquehanna Boom Co. *v.* Finney.]

intention on part of Caldwell to deliver under the contract with Wait, the property not passing by the agreement itself, there was nothing to prevent Caldwell from selling the logs to Finney, in the absence of evidence to show that Wait or Anderson Harvey for whom he bought, had complied or was ready at the time of delivery to comply with the contract.

Judgment reversed, and a *venire de novo* awarded.